# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADIL RAZIEV, | ) |
| | ) |
| Plaintiff, | ) Case No. 13 C 00737 |
| | ) |
| v. | ) |
| | ) Magistrate Judge Geraldine Soat Brown |
| COMPASS TRUCK SALES, LLC, an Illinois limited liability company, and ALEX PETRUSHEVSKI, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| COMPASS TRUCK SALES, LLC, and Illinois limited liability company, and ALEX PETRUSHEVSKI, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ATANAS IVAKIMOV, DONKA CHOUMANOVA, AND VLADI CHOUMANOV, | ) |
| | ) |
| Third-Party Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion for Sanctions (Dismissal with Prejudice) for Plaintiff's Failure to Preserve Material Evidence (Defs.' Mot.) [dkt 143], filed by Compass Truck Sales, LLC, and Alex Petrushevski. Third-party defendants Atanas Ivakimov, Donka Choumanova, and Vladi Choumanov joined the motion. (Ivakimov Mot.; Choumanova & Choumanov Mot.) [Dkt

1

147-48.] Plaintiff Adil Raziev responded to the motion (Pl.'s Resp.) [dkt 150], and Compass, Petrushevski, and Ivakimov replied (Defs.' Reply; Ivakimov Reply) [dkt 152-53]. The parties have consented to the jurisdiction of a magistrate judge. [Dkt 11, 88.] For the reasons set forth below, Defendants' motion for sanctions is granted in part and denied in part.

## Background

*Raziev's Complaint*

Raziev filed this lawsuit on January 30, 2013. (Compl.) [Dkt 1.] His first complaint alleged a single claim against Compass Truck Sales, LLC, and Petrushevski (collectively, "Compass") under the Federal Odometer Act, 49 U.S.C. § 32703(2). (*Id*.) That Act provides in part: "A person may not . . . (2) disconnect, reset, alter, or have disconnected, reset or altered, an odometer of any motor vehicle intending to change the milage registered by the odometer." The Act provides a civil remedy: " A person that violates this chapter . . . with intent to defraud, is liable for 3 times the actual damages or $1,500.00, whichever is greater." 49 U.S.C. § 32710(a)[1]

Raziev's amended complaint, filed May 31, 2013, added claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, and for fraud and breach of contract. (Am. Compl. ¶¶ 34-36, 37-42, 46-47.) [Dkt 27.][2]

---

[1] The Act was amended effective October 1, 2012, to raise the amount of statutory damages to $10,000 (Pub. L. 112-141), but that amendment does not apply to this action because there is no indication that Congress intended the amendment to be retroactive to increase the defendants' and third-party defendants' possible liability for acts done earlier in 2012. *See Landgraf v. USI Film Products*, 511 U.S. 244, 290 (1994).

[2] Two other claims were subsequently dismissed with prejudice. (Order, Sept. 10, 2013.) [Dkt 44.]

Raziev's amended complaint alleges the following. In March 2012, Raziev purchased a 2006 Volvo tractor truck, VIN # 4V4NC9GH06N401139, for $41,000 relying upon false representations made by Linas Jakovlevas, a sales consultant for Compass, that the truck had 459,000 miles and that it was still covered by the manufacturer's warranty because it had less than 500,000 miles. (*Id.* ¶¶ 7-12.)

Raziev later went to a Volvo dealership where he found out the truck actually had 588,000 miles. (*Id.* ¶ 14.) He obtained a service history for the truck that listed the mileage as of February 11, 2010 at 507,820 miles. (Am. Compl. ¶ 15.)[3] Raziev contacted the vehicle's previous owner, Choumanov, who told Raziev that he had sold the truck to Compass on March 2, 2012, and had previously advertised the truck's mileage as 588,000 miles. (*Id.* ¶¶ 17-18.) Raziev returned to Compass and confronted Petrushevski who offered Raziev his money back. (*Id.* ¶ 20.) Raziev alleges that he would not have purchased the truck if he has known it had 588,000 miles, and that the "true value of the vehicle" was worth less than $41,000. (*Id*. ¶¶ 21, 24.)

*Compass's Answer, Affirmative Defenses and Third-Party Complaint*

Compass admits that it bought the truck on March 6, 2012 but otherwise denies the material allegations. (Compass and Petruskevski's Answer at 4.) [Dkt 49.] It affirmatively alleges that Raziev has no damages because the truck was in a collision in September 2012. (*Id.,* Second Aff. Defense at 11.) The insurer declared the truck a total loss and valued it at $41,000, of which

---

[3] The document that Raziev describes as a "service history" does not bear a date for the document but shows a print out date of "3/28/12." (Am. Compl., Ex. C.)

3

Compass received the amount still due on the truck, and Raziev received the remaining amount ($16,516.05). (*Id.*)

Compass also filed a third-party complaint against Atanas Ivakimov, Donka Choumanova and Vladi Choumanov from Perfect Ten Logistics, Inc., who had contracted with Compass to sell the truck on consignment, and Atanas Ivakimov, who drove the truck to Compass. (Defs.' Third Party Compl. ¶¶ 6-7.) [Dkt 66.] Compass alleges that the third-party defendants altered the odometer on the truck prior to delivering it to Compass to show mileage of 459,000 miles, which was less than the actual mileage. (*Id.* ¶ 8.) The third-party defendants deny the allegations. (Answer (incorrectly titled "Third Party Complaint").) [Dkt 96.]

None of the title documents submitted by the parties as exhibits (for example, Exhibit D to the Amended Complaint) contain a representation of mileage, most likely because the truck was classified as exempt from the disclosure of odometer miles. 42 C.F.R § 580.17(a)(1).

*Defendants' present Motion for Sanctions*

During the course of discovery in the lawsuit, on March 30, 2015, Compass's counsel sent a letter to Raziev's counsel requesting an opportunity for Compass's expert witness, Christopher Ferrone, to inspect the vehicle's electronic control module ("ECM") and odometer. (Defs.' Mot., Ex. D.) The next day, March 31, 2015, Raziev's counsel responded: "Please advise where the 2006 Volvo Tractor (with ECM/ECU and odometer) is located? We want to be present at the time of the inspection." (*Id.*, Ex. E.) Although the parties do not describe the ECM/ECU in detail, it is apparently an internal control computer system that typically contains mileage information. Neither party indicated knowledge of the location of the ECM/ECU and odometer. (*See id.*, Exs. D-E.)

Defendants then filed the present motion for sanctions seeking dismissal with prejudice due to Raziev's alleged failure to preserve material evidence. (Defs.' Mot. at 6.) Defendants alternatively seek an evidentiary limitation and summary judgment as a sanction. (*Id.*)

**Facts**

The present motion is based on events after the September 2012 accident that resulted in the total loss of the truck. Raziev filed an insurance claim with Progressive Casualty Insurance. (Defs.' Mot. at 2, Ex. B, Dep. of Daniel J. Billisitz at 49.) The "actual cash value" of the truck was stated as $41,670. (Billisitz Dep., Ex. G at p-157.) Progressive issued a check for $40,000 payable to Raziev and Compass Equipment Finance, LLC, representing the full loss payment for the vehicle, less a $1,000 deductible, and another check for $311.38 to Raziev for the amount of excess value the salvage department determined was appropriate. (Billisitz Dep. at 49, Ex. F at p-126, 127.) The insurer's representative testified that "the truck was worth more than what the stated amount was, so our salvage department will prorate after they sell it." (Billisitz Dep. at 49.) On the same day that Raziev filed this lawsuit, January 30, 2013, Progressive sold the vehicle for salvage to Jemzo Motor Incorporated in Hammond, Indiana. (Billistiz Dep., Ex. I at p-162.)

With its motion, Compass submits a report from Christopher Ferrone, a Senior Mechanical Engineer. (Defs.' Mot., Ex. C.) Mr. Ferrone states that the 2006 Volvo has two ECUs, one for the engine and one for the dashboard display. (Defs.' Mot., Ex. C at 2.) The total life mileage is kept in the engine ECU and cannot be altered. (*Id.*) He also states that the dashboard display mileage can be changed, but the technician doing so would have to be logged into Volvo software, and Volvo would have a record of that change. (*Id.* at 3.) The Volvo records he reviewed do not show a change

to either the dashboard display ECU or the engine ECU.  (*Id*.)  Ferrone thinks it is more likely than not that the mileage reported by Chicago Mack in its service records (indicated at 462,137 on page 2 of Mr. Ferrone's report and as "469K" on page 3) was obtained from the dash display.  (*Id*.)  He concludes that it is more likely than not that the dash display ECU was changed or replaced with a different unit (*id*.), although that conclusion appears to be at odds with his statement that the Volvo records show no such change.  Finally, Ferrone concludes that "without the 2006 Volvo tractor and its two ECUs, it is not possible to make a definitive conclusion of the life total mileage of this truck at specific point in time."  (*Id*.)

**Legal Standard**

The court may impose sanctions where necessary to prevent abuses of the judicial process and promote the efficient administration of justice.  *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).  "[T]he Supreme Court has expressly stated that sanctions may be appropriate in any one of three instances – where the noncomplying party acted either with wilfulness, bad faith or fault."  *Morrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (emphasis and citations omitted).  "This power includes sanctioning parties for failure to preserve potential evidence that is properly discoverable."  *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07 C 3061, 2008 WL 4365972 at *6 (N.D. Ill. Mar. 18, 2008).

> In determining whether sanctions are appropriate for spoliation, the court is guided by whether (1) there was a duty to preserve the specific documents; (2) that duty or obligation was breached; (3) there was willfulness, bad faith, or fault; (4) [plaintiff] was prejudiced; and (5) an appropriate sanction can ameliorate the prejudice from the breach.  A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action.  This duty extends to "evidence that [the party] has notice is reasonably likely to be

> subject of a discovery request." Notice need not take the form of a formal discovery request. Notice may be received *before* a complaint is filed if it is known mat [sic] litigation is likely to begin, or a party is alerted that certain information is likely to be sought in discovery.

*Id.* (citations omitted, emphasis in original).

The district court's inherent authority also allows for dismissal for discovery violations or bad faith conduct. *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758-59 (7th Cir. 2005). However, the authority to dismiss should only be used if there is a record of delay or contumacious conduct. *Id.* at 759. Contumacious conduct that may merit dismissal includes fault, bad faith, or willfulness. *See id.*

> Although wilfulness and bad faith are associated with conduct that is intentional or reckless, the same is not true for "fault." Fault "does [not] speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation."

*Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (quoting *Morrocco*, 966 F.2d at 224). "Absent [these] circumstances, the careful exercise of judicial discretion requires that a district court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice." *Long*, 213 F. 3d at 986 (citation omitted, alteration in the original).

## Discussion

Compass argues that Raziev's failure to preserve the ECU and odometer evidence merits dismissal of the case. (Defs.' Mot. at 5-6.) Compass asserts that because no documentary evidence establishes when the odometer was rolled back, the absence of the ECU and the odometer prejudice its ability to defend against Raziev's claims and to prosecute its third-party claims. (*Id.* at 5.) Third-party defendants have joined in Compass's motion, arguing that the failure to preserve material

evidence similarly prejudiced their ability to defend against the allegations in the third-party complaint. (Ivakimov Mot. at 2.) Raziev responds that the case does not hinge on the odometer or ECU, but rather on the testimony of the parties and the documents showing the various representations of the vehicle's mileage. (Pl.'s Resp. at 4-5.)

*Duty to Preserve*

It appears that none of the parties now know the whereabouts of the truck, much less the location of the ECU and odometer. The issue on the motion, however, is whether the duty to preserve that evidence was violated, which begins with the question of whether the ECU and odometer might have been material evidence in this lawsuit. Raziev claims that Compass violated the Federal Odometer Act, which prohibits directly or indirectly causing a motor vehicle's odometer to be disconnected, reset, or altered. 49 U.S.C. § 32703(2). Without reaching the question of whether the ECU and odometer would have been relevant to Raziev's other claims, they were plainly material evidence to his Federal Odometer Act claim, which is premised on the improper manipulation of the actual item – the odometer. The odometer and ECU could have provided direct evidence of whether the odometer had been turned back and, if so, when and by how much. Those facts could have led to the identity of the person liable if the truck was then known to be in a specific party's possession or control. There was a duty to preserve the ECU and odometer.

*Breach of Duty*

The obligation to preserve potentially material evidence may arise before a complaint is filed if litigation is likely to begin or a party is aware that certain information is likely to be sought in

discovery. *See Wells*, 2008 WL 4365972 at *6. The allegations of Raziev's complaint (taken as true for purposes of the motion) show that Raziev realized that his truck's mileage may have been tampered with as early as April 2012, after he spoke with a Volvo dealership, obtained a service history, and contacted the vehicle's previous owner. In his deposition, Raziev testified that after obtaining this information, and well before he filed this lawsuit, he told a Compass representative that he intend to file suit against the company. (Defs.' Mot., Ex. A, Raziev Dep. at 65-66.) That was sufficient to put Raziev on notice that the evidence underlying his claim should be preserved.

In spite of threatening the lawsuit, Raziev made no effort to maintain the ECU and odometer. He continued to use the truck until he had an accident, following which he made an insurance claim and received a check from Progressive. There is no evidence that Raziev requested that Progressive preserve the ECU or odometer. A party is not relieved from its duty to preserve potentially material evidence simply because it sells the evidence, or as here, relinquishes direct control in exchange for an insurance claim.

Raziev then brought suit in January 2013, eight months after he says he became aware that the odometer had been rolled back, and again the record does not indicate that he requested the ECU and odometer be preserved. Progressive sold the vehicle for salvage, on the same day the lawsuit was filed, to Jemzo Motor Incorporated. From the record, that is the last known location of the vehicle. There is no indication in the record that Raziev made any effort to contact Jemzo to have it preserve the ECU or odometer. Certainly, as he prepared to file the lawsuit, Raziev and his counsel had notice to preserve the evidence underlying the claims in that lawsuit.

Raziev argues that he was not required to preserve the evidence because this is not a products liability case and there are no allegations of defective parts. (Pl.'s Resp. at 2.) The obligation to

preserve material evidence is not, however, limited to products liability actions. As discussed above, the ECU and odometer could have played a significant role in determining the existence of a Federal Odometer Act violation. It is the materiality of the evidence to the claim, not the nature of the claim, that determines the obligation to preserve.

Raziev also tries to argue that Compass could have and should have preserved the evidence. He asserts that, because he financed the purchase of the vehicle through Compass's sister company, Compass Equipment Finance, LLC, which approved the sale for salvage after the release of its lien, Compass could have requested that the evidence be preserved before the lien was released. (Pl.'s Resp. at 2-3.)

Raziev cannot avoid his obligation to preserve evidence material to his claim by passing the buck to Compass. At the time the truck was sold by Progressive in January 2013, Compass had no reason to expect that the odometer and ECU would be material evidence in a lawsuit. Raziev returned to Compass to complain about the mileage in April 2012, but refused a refund and continued to drive the truck until the accident. The insurer then paid off the total amount of the purchase price -- and more. There is no evidence that Raziev or his attorney said anything to Compass about a possible Odometer Act claim at the time the insurance claim was processed. Raziev and his attorney were the ones who planned to file this lawsuit, and did file it – on the very day the truck was sold for scrap. *See, e.g., Langley v. Union Electric Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (plaintiff was at fault for loss of evidence that had been stored by co-plaintiff in home of another person; plaintiff demonstrated "poor judgment . . . and a degree of indolence as well as lack of candor").

*Willfulness, Bad Faith, or Fault*

Willfulness and bad faith imply behavior that was intentional or reckless. Compass and the third-party defendants do not explicitly argue that Raziev's behavior was intentional or reckless. Fault, on the other hand, is "unconcerned with the non-complying party's subjective motivation," but rather looks to the reasonableness of the conduct that culminated in a violation. *Langley*, 107 F.3d at 514. The record shows that it was unreasonable for Raziev not to make any effort to preserve the ECU and odometer underlying his eventual claims after he first contemplated suing Compass. Raziev was at fault for failing to failing to take steps to preserve the ECU and odometer.

*Prejudice*

Compass and the third-party defendants argue that the unavailability of the ECU and odometer substantially impairs their ability to defend Raziev's claims. Compass's expert opines that without the devices, it is not possible to determine whether the total mileage was altered, when the total mileage was altered, and who altered the total mileage.

Raziev disputes the degree of prejudice to Compass and the third-party defendants resulting from the unavailability of the devices. He does not deny that inspecting the ECU and odometer could have been useful for showing when the violation occurred and who was responsible, which is presumably why his attorney wanted to inspect the devices when Compass's attorney initially suggested it. In fact, he suggests that the ECU and odometer would have corroborated his claim (Pl.'s Resp. at 6), although he also argues that he doesn't need the devices to prove his case (*id*. at 5).

11

Instead, Raziev speculates that the odometer and ECU "may" have been damaged in the September 2012 accident and, if it had been, the devices would not have benefitted any party. (Pl.'s Resp. at 6.) That argument asks the court to assume that the ECU and odometer would have provided *no* material evidence because of their condition after the accident. The court will not make that assumption in the absence of any evidence about the condition of the devices after the accident. Compass and the third-party defendants were prejudiced by not having the ECU and odometer available for inspection following the filing of the lawsuit.

*A Sanction to Ameliorate the Prejudice from the Breach*

Dismissal may be warranted where the plaintiff's failure to preserve evidence leaves the defendant with no ability to defend against the plaintiff's claims. *See, e.g., Allstate Ins. Co. v. Sunbeam Corp.*, 865 F. Supp. 1267, 1279 (N.D. Ill. 1994). Dismissal is also appropriate "where lesser sanctions under the circumstances would unfairly minimize the seriousness of the misconduct and fail sufficiently to deter such misconduct by others in the future." *Grubb v. Board of Trustees of Univ. of Illinois*, 730 F. Supp. 2d 860, 864 (N.D. Ill. 2010) (collecting cases). Dismissal with prejudice for a discovery violation is, however, an extreme sanction, and the court should consider whether a lesser sanction will suffice. *Id.*

*Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2002 WL 31163722 (N.D. Ill. Sept. 26, 2002), is instructive here. *Lekkas* involved a fatal rollover car accident that gave rise to two separate claims: that the car's roof caused the fatality because it was not crashworthy, and that the car's defective design made it prone to rollover. *Id.* The vehicle was sold as salvage before the "roof crush" was measured or documented as to amount, type, cause and location. *Id.* at \*6-7.

Circumstantial evidence consisted only of witness descriptions and photographs of the vehicle. *Id.* at *6. Rather than dismissing the case, the court concluded that the lesser sanction of limiting the evidence was appropriate, and barred the Plaintiff from introducing evidence or testimony related to the damage sustained by the roof of the vehicle during the crash. *Id.* at *6-7. The result, however, was that the plaintiff could not sustain her burden of showing that the roof was in an unreasonably dangerous condition, and summary judgment was entered for the defendant on that claim. *Id*. at *10.

After carefully considering the arguments of the parties and materials submitted on the motion, the court concludes that dismissal is not appropriate at this time. It is not clear from the record currently before the court that the unavailability of the ECU and the odometer makes it impossible for Compass and the third-party defendants to defend the claims against them. On the contrary, the fact that the ECU and odometer are not available for testing and analysis raises a question of how Raziev will prove that Compass and Petruschevski physically manipulated – disconnected, reset, or altered – the odometer, which is what Raziev is required to prove for his claim under the Odometer Act. *See, e.g., Langley*, 107 F.3d at 515 (removal of the furnace made the case "not triable" because "the linchpin of this case is how the furnace was hooked up").

Instead, the alternative proposed by Compass – an evidentiary limitation – is appropriate. Compass, however, has not described the precise nature of its requested limitation, asking only that the court "enter an order barring Plaintiff from presenting certain evidence relating to the 2006 Volvo." (Defs.' Mot. at 6.) The "certain evidence" is not identified.

The better approach is to address any disadvantage posed to Compass and the third-party defendants from the unavailability of the ECU and odometer in the context of specific evidence Raziev presents to support his claim. The court will entertain a motion in limine by Compass or the

13

third-party defendants to preclude specific evidence if they can show that their ability to refute or respond to that evidence was impaired by the unavailability of the devices.

*Summary Judgment*

The court also declines Compass's alternative suggestion of granting summary judgment in its favor.

> While not encouraged, a district court can enter summary judgment *sua sponte*, or on its own motion, under certain limited circumstances. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996); *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993). However, "[g]ranting summary judgment *sua sponte* warrants special caution." *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir. 1987) (emphasis added). As a general rule, a district court lacks the power to grant summary judgment *sua sponte* unless the party against whom summary judgment was entered had (1) proper notice that the district court was considering entering summary judgment and (2) a fair opportunity to present evidence in opposition to the court's entry of summary judgment. *See Celotex*, 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."); *English*, 10 F.3d at 437 ("[I]t is rudimentary that a court cannot *sua sponte* enter summary judgment ... without notifying the parties of its intentions and allowing them an opportunity ... to respond."). Thus, the appropriateness of a district court's grant of summary judgment *sua sponte* turns on proper notice to the adverse party and a fair opportunity to be heard.

*Simpson v. Merchants Recovery Bureau, Inc.*, 171 F.3d 546, 549 (7th Cir. 1999). Compass's cursory mention of summary judgment at the end of its motion is insufficient to provide proper notice to Raziev to respond appropriately. There are still expert depositions to be taken. (Pl.'s Resp. at 5.) Discovery should be completed before any summary judgment motions are entertained.

**Conclusion**

Defendants' Motion for Sanctions [dkt 143] in which third-party defendants joined, is granted in part and denied in part as discussed above. The stay on discovery is lifted. Status hearing is set for November 10, 2015 at 9:45 a.m.

_____
Geraldine Soat Brown
United States Magistrate Judge

DATE: October 30, 2015